UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN M. JUSTICE, | ) | CASE NO. 1:12CV1541 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

  This matter comes before the Court upon Plaintiff's Objections (ECF DKT #21) to the Report and Recommendation (ECF DKT #20) of Magistrate Judge Armstrong, that the Court affirm the Commissioner's decision denying Plaintiff's Claim for Disability Insurance Benefits ("DIB") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  For the following reasons, the Court ADOPTS Magistrate Judge Armstrong's Report and Recommendation and AFFIRMS the Commissioner's denial of Plaintiff's Claim for Disability Insurance Benefits.

## BACKGROUND

The following is a factual synopsis of Plaintiff's claims. The Magistrate Judge's Report and Recommendation provides a more complete and detailed discussion of the facts.

Plaintiff filed an application for DIB on November 12, 2010. On November 24, 2010, Plaintiff filed an application for SSI under Title XVI of the Social Security Act, 42 U.S.C. § 1381. In both applications, Plaintiff alleged a period of disability beginning November 5, 2010. Plaintiff's claims were denied initially on April 25, 2011, and upon reconsideration on August 9, 2011. Plaintiff thereafter filed a timely written request for a hearing on August 19, 2011.

On January 10, 2012, Plaintiff appeared with counsel for a hearing before Administrative Law Judge Frederick Andreas ("ALJ Andreas"). Also appearing at the hearing was an impartial Vocational Expert ("VE"). ALJ Andreas found Plaintiff to have a severe combination of carpal tunnel syndrome, cervical and lumbar disc disease, and depression with an onset date of November 5, 2010. Despite these limitations, ALJ Andreas determined, based on all the evidence presented, that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of his decision. ALJ Andreas found Plaintiff had the residual functional capacity to perform light work. Therefore, Plaintiff's request for benefits was denied.

Plaintiff initiated this action pursuant to 42 U.S.C. § 405(g) on June 15, 2012. Magistrate Judge Armstrong issued a Report and Recommendation on March 8, 2013, recommending that the Court affirm the Commissioner's decision denying

Plaintiff's Claim for DIB and SSI.

Plaintiff's medical records dealing with her physical impairments date back to February 9, 2007, when Plaintiff underwent radiology testing of her chest and lumbar spine. Plaintiff's chest exam was normal, showing no acute cardiac or pulmonary disease. Testing of Plaintiff's lumbar spine showed mild disc space reduction of the L5- S1 vertebrae, mild end plate sclerosis with early osteophyte formation at the L4 vertebrae, but no spondylolysis or spondylolisthesis. Plaintiff was diagnosed with only mild arthritic changes. Two years later, on February 16, 2009, Plaintiff underwent radiology testing of her cervical spine. The results were unremarkable.

On April 14, 2009, Plaintiff had an x-ray of her left shoulder, which yielded normal results. On May 5, 2009, Dr. Armstrong Murphy, MD ("Dr. Murphy") conducted an electrodiagnostic study, which revealed evidence of mild carpal tunnel syndrome in Plaintiff's left hand, for which Plaintiff was given night splints. On May 18, 2009, Plaintiff was seen by Dr. Santhosh Thomas, DO ("Dr. Thomas") for a consultive examination at the request of Dr. George K. Adams, DO ("Dr. Adams"), Plaintiff's treating physician. Plaintiff presented with chronic lower back pain. Upon examination, Plaintiff had no tenderness over her paraspinal muscles or tenderness on percussion of her spinous processes. She did have some decreased internal rotation in her left shoulder. Dr. Thomas reported that Plaintiff had: (1) small, uncovertebral joint osteophytes at the C4-5, C5-6 and C6-7 vertebrae without disc narrowing; (2) moderate degenerative disc disease at the L4-5 vertebrae; (3) small anterior endplate osteophytes at the L3-4 vertebrae; and (4) minimal degenerative facet changes and lower lumbar spine osteopenia. Plaintiff was diagnosed with

cervical disc degeneration, brachial neuritis not otherwise specified ("NOS"), lumbosacral spondylosis, and a backache NOS.

On November 6, 2009, Plaintiff saw Dr. Adams for a maintenance examination. Dr. Adams treated Plaintiff for high cholesterol and fibromyalgia. Plaintiff did not return to Dr. Adams for nearly one year, until October 7, 2010. During this October appointment, Plaintiff claimed to still be working fifty to sixty hours per week. Plaintiff was treated for high cholesterol, mild depression, fibromyalgia, and anxiety. On December 14, 2010, Dr. Adams completed a survey at the request of the Bureau of Disability Determination ("BDD") and listed Plaintiff's ailments as follows: chronic pain, fibromyalgia, depression, back and spine issues, rotator cuff tendonitis, and carpal tunnel syndrome. Dr. Adams opined that Plaintiff was "significantly impaired" as a result of her multiple ailments.

Plaintiff returned to Dr. Adams on February 21, 2011, complaining of daytime fatigue. Plaintiff was treated for fibromyalgia, high cholesterol, sleep apnea, tobacco use, and anxiety. On March 30, 2011, Plaintiff underwent a Manual Muscle Testing Evaluation with Dr. Marsha D. Cooper, MD ("Dr. Cooper") at the request of the BDD. The overall evaluation was normal. Dr. Cooper suggested that Plaintiff work a sedentary job.

Plaintiff went to the Amherst Hospital Emergency Room ("Amherst ER") on June 13, 2011, complaining of right shoulder pain that was radiating into her chest. Testing showed degenerative changes at Plaintiff's C5-6 vertebrae as well as lung hyperinflation. Plaintiff was diagnosed with fibromyalgia and discharged. On August 3, 2011, Plaintiff saw Dr. Daniel J. Zanotti, MD ("Dr. Zanotti") complaining of right

neck and shoulder pain that was radiating.  Dr. Zanotti diagnosed Plaintiff with a right shoulder sprain/impingement and cervical degenerative disease with possible radiculopathy.

On August 8, 2011, Dr. Adams sent Plaintiff for an MRI of her right shoulder, which revealed mild tendonopathy, and/or a partial tear.  On September 2, 2011, Plaintiff underwent a cervical MRI, which revealed mild right neuroforaminalstenosis at the C3-4, C4-5, C5-6, and C6-7 vertebrae, and bilateral disc osteophyte complexes with disc herniation extending into the right lateral recess at the C5-6 and C6-7 vertebrae.  Plaintiff returned to Dr. Zanotti on September 12, 2011, complaining of continuing pain in her neck and spine which was radiating down her right arm.  Dr. Zanotti noted that Plaintiff had some pain with impingement maneuvers.  Based on her recent MRI, Dr. Zanotti opined that Plaintiff likely suffered from some bilateral neural foraminal stenosis with a questionable disc herniation at the C5-6 vertebrae.

On October 26, 2011, Plaintiff saw neurologist Dr. Domingo Gonzalez, MD ("Dr. Gonzalez"), complaining of cervical pain that was radiating into her right upper extremity.  Plaintiff also reported weakness on gripping with her right side and pains in the anterior portion of her right shoulder with occasional tingling.  An examination revealed some limitation of Plaintiff's cervical spine motion and some tenderness upon palpation on the anterior portion of her right shoulder.  Dr. Gonzalez also noted minimal atrophy of her right side, although Plaintiff's strength was normal for all of her extremities.  Dr. Gonzalez diagnosed Plaintiff with cervical radiculopathy in her right upper extremity from degenerative changes and a herniated disc at the C5-6 vertebrae.  He recommended conservative treatment.

Plaintiff's mental health records date back to July 11, 2004, to an initial assessment at the Nord Center. Plaintiff reported being depressed, anxious, and angry, with thoughts of worthlessness, helplessness, and hopelessness. Nord Center staff assigned Plaintiff a Global Assessment of Functioning ("GAF") score of forty-eight, which indicates serious symptoms or any serious impairment in social, occupational, or school functioning. Plaintiff was discharged. On December 17, 2005, Plaintiff was again seen at the Nord Center. After an in-person assessment, Plaintiff was cleared and discharged home. Plaintiff again returned to the Nord Center on September 1, 2011, and appeared motivated for counseling.

On October 11, 2006, Plaintiff underwent an Adult Diagnostic Assessment with Ben Miladin, LISW ("Mr. Miladin"). Mr. Miladin diagnosed Plaintiff with an adjustment disorder with depressed mood and polysubstance abuse in full sustained remission. Plaintiff was assigned a GAF score of seventy, which indicates some mild symptoms or some difficulty in social, occupational, or school functioning.

On May 29, 2008, Plaintiff underwent a Physical Residual Functional Capacity Assessment with Dr. Adams. Dr. Adams reported that Plaintiff could: (1) stand/walk for 6.5-8 hours during an eight-hour workday; (2) sit for 5.5-8 hours during an eight-hour workday; (3) lift eleven to twenty pounds occasionally; (4) use hands for repetitive simple grasping, pushing/pulling, and fine manipulation; (5) use feet for repetitive movements in operating foot controls; (6) frequently bend and squat; (7) occasionally climb and push/pull; and (8) can never crawl.

On February 17, 2011, Plaintiff underwent a Psychological Evaluation with Dr. Ronald G. Smith ("Dr. Smith") at the request of the BDD. Dr. Smith diagnosed

Plaintiff with a pain disorder associated with psychological factors, depressive disorder NOS, personality NOS, and assigned her a GAF score of fifty, which indicates serious symptoms or any serious impairment in social, occupation, or school functioning.  On August 8, 2011, Plaintiff underwent a Diagnostic Assessment at the Nord Center.  Nord Center staff assigned Plaintiff a GAF score of fifty-eight, which indicates moderate symptoms or moderate difficulty in social, occupation, or school functioning.

## STANDARD OF REVIEW

The Court exercises jurisdiction over the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 832-33 (6th Cir. 2006).  In conducting judicial review, the Court must affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence. *Id. (citing Branham v. Gardner*, 383 F.2d 614, 626-27 (6th Cir. 1967)).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . ." *McClanahan*, 474 F.3d at 833 (*citing* 42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *McClanahan*, 474 F.3d at 833 (*citing Besaw v. Sec'y of Health and Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992)). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . This is so because there is a 'zone of choice' within which the Commissioner can act,

without the fear of court interference." *McClanahan*, 474 F.3d at 833 (*citing Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted)).

## LAW AND ANALYSIS

The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical for purposes of this case, and are found at 20 C.F.R. §§ 404.1520 and 416.920. *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). DIB and SSI are available only for those who have a "disability." 42 U.S.C. § 423(a), (d); *see also* 20 C.F.R. § 416.920. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Colvin*, 475 F.3d at 730 (*citing* 42U.S.C. § 423(d)(1)(A)) (definition used in the DIB context); *see also* 20 C.F.R. § 416.905(a) (same definition used in the SSI context).

The Commissioner uses a five-step sequential evaluation process to evaluate a DIB or SSI claim. First, a claimant must demonstrate he is not engaged in "substantial gainful activity" at the time he seeks disability benefits. *Colvin,* 475 F.3d at 730 (citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)). Second, a claimant must show he suffers from a "severe impairment." *Colvin*, 475 F.3d at 730. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (*citing Abbott*, 905 F. 2d at 923). At the third step, a claimant is presumed to be disabled regardless of age, education, or work experience if he is not engaged in substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment

meets the requirements of a "listed" impairment. *Colvin*, 475 F.3d at 730.

Prior to considering step four, the Commissioner must determine a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). An individual's residual functional capacity is an administrative "assessment of [the claimant's] physical and mental work abilities – what the individual can or cannot do despite his or her limitations." *Converse v. Astrue*, 2009 U.S. Dist. LEXIS 126214, *16 (S.D. Ohio 2009); *see also* 20 C.F.R. § 404.1545(a). It "is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Converse*, 2009 U.S. Dist. LEXIS 126214 at *17 (quoting SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996) (emphasis in original) (internal citations omitted)). The Commissioner must next determine whether the claimant has the residual functional capacity to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If he does, the claimant is not disabled.

Finally, even if the claimant's impairment does prevent him from doing past relevant work, the claimant will not be considered disabled if other work exists in the national economy that he can perform. *Colvin*, 475 F.3d at 730 (*citing Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (internal citations omitted) (second alteration in original)). A dispositive finding by the Commissioner at any point in the five-step process terminates the review. *Colvin*, 475 F.3d at 730 (*citing* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).

In the Report and Recommendation, the Magistrate Judge held that while it is

clear that Plaintiff suffers from some degree of muscle and back pain, carpal tunnel syndrome, and depression, Plaintiff's ailments do not rise to the level of severity required by Social Security regulations. ALJ Andreas found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1; Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she is limited to only occasional overhead reaching, can only relate to others on a superficial level, and is limited to doing routine tasks in a static environment; and, Plaintiff is capable of performing past relevant work as a cafeteria worker and as a cashier.

When Plaintiff filed her Complaint, she included a letter from Dr. Adams that was not before the ALJ. The letter is a summary of Plaintiff's various physical and emotional problems. In the letter, Dr. Adams opines that Plaintiff could not be gainfully employed. Defendant argues that since this letter was not before the ALJ, it is ineligible for consideration by this Court. "When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g)." *Mendendorp v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 40019, *16 (W.D. Mich. Jan. 30, 2012).

The issue of whether or not this letter should be considered by the ALJ may only be addressed through a motion for a sentence six remand under 42 U.S.C. § 405(g). Sentence six states:

> The court may, on motion of the Commissioner of Social Security made

-10-

> for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

In order to show that evidence is new, Plaintiff must show that the evidence "was not in existence or available to the claimant at the time of the administrative proceeding." *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483-84 (6th Cir. 2006) (*quoting Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)). In order to be material, the proposed evidence must show that "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Hollon*, 447 F.3d at 483-84 (*quoting Foster*, 279 F.3d at 357).

The Magistrate Judge points out that the information in the letter is neither new, nor material. The letter is simply a summary of what Dr. Adams has been saying for years. Dr. Adams' opinion that Plaintiff is unable to work is not relevant to the ALJ. The determination of disability is strictly a legal, not a medical, issue, and is reserved solely to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). The Magistrate Judge determined that Dr. Adams' March 2012 letter does not create

a reasonable probability that the Commissioner would reach a different disposition of this case.  Additionally, Plaintiff has failed to show any cause for not acquiring and providing a letter from Dr. Adams to be included as evidence at her hearing. Therefore, Plaintiff's letter from Dr. Adams fails to satisfy the requirements of a sentence six remand.

In Plaintiff's Objections, she restates all of her physical impairments and health issues, which she asserts are so severe that she cannot work at any type of job. Plaintiff asserts that her fibromyalgia was not given the proper consideration as a debilitating disease.  Plaintiff further states that the techniques used by the Commissioner to determine if she is eligible for DIB is flawed, and the decision of the ALJ is wrong.  The Court disagrees.  After a thorough examination of the evidence, the Court finds there is substantial evidence in the record to support the ALJ's findings.  The Court agrees with the ALJ that Plaintiff is able to perform light work.

## CONCLUSION

Based upon the foregoing analysis, the Court finds that Plaintiff's Objections are without merit.  Therefore, the Magistrate Judge's Report and Recommendation (ECF DKT #20) is ADOPTED and the Commissioner's denial of Plaintiff's Claim for Disability Insurance Benefits is AFFIRMED.

**IT IS SO ORDERED.**

**DATE: 4/24/13**

  **s/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**